IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M. S., JEREMIAH SHINGLEDECKER, AND ALEXIS SHINGLEDECKER, <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN POWER SPORTS, INC., <br><br> Defendant and Third-Party Plaintiff, <br><br> v. <br><br> LIL LIGHTNING LLC, ROBERT WARREN, and BOB'S CUSTOM & REPAIR, INC., <br><br> Third-Party Defendants. | 1:19-CV-00017-CCW |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Third-Party Defendant Lil Lightning's Renewed Motion to Dismiss for Lack of Jurisdiction. For the reasons set forth below, the Court hereby GRANTS Lil Lightning's Renewed Motion.

**I.      Background**

This case arises out of an incident in which an RP3 Lightning Pak lithium ion battery (the "RP3") attached to a utility terrain vehicle allegedly exploded. *See* ECF No. 1 at ¶¶ 16–19. Plaintiffs claim that Plaintiff M.S., a minor, was sitting in the vehicle at the time of the explosion, suffering severe injuries as a result. *Id.*

The RP3, which appears to have been originally manufactured in China, ECF No. 76-1 at 31:4-7 (Deposition of Daniel Lopez), was allegedly sold by Lil Lightning, a now-defunct Idaho LLC, to Western Power Sports, Inc. ("Western"). ECF No. 77 at 3–4. At Western's direction, Lil

Lightning shipped the RP3 to Western's warehouse in Pennsylvania, one of six such warehouses Western maintains to serve its nationwide network of distributors. ECF No. 76-1 at 53:14–55:25; 79:17–80-6; 90:1–13. Western then allegedly sold the RP3 to Gellner's Sales & Service, a Pennsylvania entity, which then allegedly sold the RP3 to Bob's Custom & Repair, Inc., a Pennsylvania company owned by Robert Warren ("Warren"). *See* ECF No. 1 at ¶¶ 11–13. Warren allegedly attached the RP3 to the utility terrain vehicle shortly before the RP3 exploded. *Id.* at ¶¶ 14–19.

Plaintiffs Alexis and Jeremiah Shingledecker filed this lawsuit on January 18, 2019, suing Western Power Sports, Inc., both in their own right and on behalf of M.S. *See* ECF No. 1. Western, in turn, filed a third-party complaint naming Lil Lightning, Warren, and Bob's Custom & Repairs, Inc. as third-party defendants. *See* ECF No. 30.

On January 17, 2020, Lil Lightning moved to dismiss for lack of personal jurisdiction. *See* ECF Nos. 48 and 49. On September 1, 2020, the Honorable Susan Paradise Baxter, who previously presided over this case, denied Lil Lightning's first motion to dismiss without prejudice. *See* ECF No. 63. Although Judge Baxter found that general personal jurisdiction was lacking, she ordered a period of jurisdictional discovery regarding specific personal jurisdiction to resolve "factual questions…concerning the sufficiency of Lil Lightning's Pennsylvania contacts and their possible nexus to the instant litigation." ECF No. 62 at 9.

Following jurisdictional discovery, Lil Lightning filed its Renewed Motion and supporting memorandum on November 20, 2020, seeking dismissal of Western's Third-Party Complaint against it under Federal Rule of Civil Procedure 12(b)(2). ECF Nos. 75 and 76. Western responded on December 11, 2020. ECF No. 77. With the filing of Lil Lightning's Reply in Support, ECF No. 78, on December 18, 2020, this Motion is ripe for disposition.

II. **Standard of Review**

"Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In opposing a motion under Rule 12(b)(2), "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). However, where the district court does "not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Personal jurisdiction can either be in the form of general (i.e. all-purpose) personal jurisdiction or specific (i.e. case-linked) personal jurisdiction. *See Bristol-Meyer Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1779-80 (2017). Because the Court previously determined that Lil Lightning is not amenable to general personal jurisdiction, only specific personal jurisdiction is currently at issue. ECF No. 62 at 5–6. A district court "typically exercises jurisdiction according to the law of the state where it sits" under Fed. R. Civ. P. 4(k), and Pennsylvania's long-arm statute permits jurisdiction to be exercised "based on the most minimum contact with the Commonwealth allowed under the Constitution of the united States." 42 Pa.C.S. § 5322(b). Therefore, in analyzing whether personal jurisdiction exists, this Court must determine "whether, under the Due Process Clause, the defendant has 'certain minimum contacts with…[Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The specific jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The United States Court of Appeals for the Third Circuit has elaborated a three-part test to determine whether specific jurisdiction exists. First, "the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor* at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Third, and finally, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" *Id.* (quoting *Burger King*, 471 U.S. at 476 (quoting *Int'l Show Co. v. Washington*, 326 U.S. 320 (1945))).

"The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *D'Jamoos*, 566 F.3d at 102-03 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Although physical entrance into the forum state is not required for specific jurisdiction to exist, "what is necessary is a deliberate targeting of the forum. Thus, the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *O'Connor*, 496 F.3d at 317 (quoting *Hanson*, 357 U.S. at 253). That is, "[d]ue process shields persons from the judgments of a forum with which they have established no substantial ties or relationship." *Deutz*, 270 F.3d at 150.

"If these 'purposeful availment' and 'relationship' requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction 'comport[s] with fair play and substantial justice.'" *Miller Yacht Sales*, 384 F.3d at 97 (quoting *Burger King*, 471 U.S. at 476). In addressing the "fairness question," a district court may consider

4

"'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.'" *Id.*

### III.   Discussion

Lil Lightning argues that it should be dismissed from this case because the record "confirm[s] that Lil Lightning did not purposefully direct any of its activities to Pennsylvania.". ECF No. 76 at 2. In short, Lil Lightning's position is that, because its commercial relationship with Western was centered entirely in Idaho and because Western alone decided where shipments of Lil Lightning's products were to be sent, "Lil Lightning has not purposefully directed its activities toward Pennsylvania," and, therefore, it is not amenable to specific personal jurisdiction in Pennsylvania in this case. ECF No. 76 at 10 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003).

Western opposes Lil Lightning's Renewed Motion on the ground that "the evidence has demonstrated without doubt that the subject RP3 was shipped into Pennsylvania" by Lil Lightning.[1] ECF No. 77 at 1. Furthermore, according to Western, even though the destination of Lil Lightning's shipments was determined at Western's sole discretion, the fact that Lil Lightning itself shipped products (including the RP3) from Idaho to Western's Pennsylvania warehouse satisfies the "purposeful availment" and "deliberate targeting" requirements for specific personal jurisdiction. *Id.* at 7. As such, Western posits that Lil Lightning's "contact with Pennsylvania cannot be described as 'random,' 'fortuitous,' or 'attenuated'" because Lil Lightning "[sold] the subject RP3 to Western Power Sports, and then directly shipp[ed] the subject RP3 to

---

[1] Although Western refers in its Opposition to excerpts from the deposition of Daniel Lopez—which purportedly support this and other assertions of fact—as being "attached hereto as Exhibit 'A,'" Western did not attach any exhibits to its Opposition and the deposition excerpts it alludes to are not part of the record in this case.

Pennsylvania." *Id*. From this, and citing only to California state court decisions, Western concludes that Lil Lightning "had 'clear notice that it is subject to suit'" in Pennsylvania, therefore making jurisdiction proper. *Id.* (citations omitted).

Western attempts to buttress its position with a "stream of commerce" theory rooted in Justice Breyer's opinion from *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring). *Id.* at 7-8. Western suggests that the "something more" Justice Breyer's theory would require to make the exercise of personal jurisdiction under a stream of commerce theory proper—which Justice Breyer suggested could include "special state-related design, advertising, advice, marketing, or anything else," *id.*—is supplied by Lil Lightning shipping products directly to Pennsylvania: "Not only had Lil Lightning partnered with Western Power Sports for the regular, nationwide distribution of its products—Lil Lightning took the extra step of shipping the products including the subject RP3 into Pennsylvania." *Id.* at 8.

The stream of commerce theory has not been adopted by a majority of the Supreme Court, and the Third Circuit has declined to endorse it. *See Shuker v. Smith & Nephew, PLC,* 885 F.3d 760, 780 (3d Cir. 2018) ("We perceive no merit in the Shukers' stream-of-commerce theory of personal jurisdiction.") Third Circuit precedent requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Asahi Metal Indus Co. v. Superior Court*, 480 U.S. 102, 108, 109 (1987)). And "'what is necessary is a deliberate targeting of the forum,,'… so efforts 'to exploit a national market' that 'necessarily included Pennsylvania' are insufficient." *Id.* (quoting *O'Connor*, 496 F.3d at 317 and *D'Jamoos*, 566 F.3d at 104).

Thus, even construed in Western's favor, the evidence regarding Lil Lightning's connections to Pennsylvania does not demonstrate "purposeful availment" or "deliberate

6

targeting" such that the exercise of specific personal jurisdiction would be proper here. The evidence before the Court confirms that all contract negotiations between Western and Lil Lightning occurred in Idaho; that Western's purchase orders for Lil Lightning's products originated in Idaho; and that Lil Lightning generated and sent invoices to Western in Idaho from Lil Lightning's offices in Idaho. *See* ECF No. 76-1 at 26:1–16; 38:8–41:18. Furthermore, Western's own corporate designee admitted that Western alone—without input from Lil Lightning—directed Lil Lightning where to send products. *Id.* at 58:8–15. Indeed, it appears the RP3 at issue was not shipped directly to a customer or end-user, but to Western's warehouse in Pennsylvania—one of six such warehouses serving Western's nation-wide network of distributors—from which it could have been shipped to a customer in any other state. *Id.* at 53:14–55:25. Nor is there any evidence that Lil Lightning ever directly sold an RP3 to an end-user in Pennsylvania, sent salespeople or other representatives to Pennsylvania, or fielded a warranty claim from a Pennsylvania consumer. *Id.* at 90:1–93:7.

In sum, Lil Lightning's sole contact with Pennsylvania appears to be shipping products, at the sole discretion of *Western*, its Idaho customer, to a warehouse which *Western* maintained in Pennsylvania for the purpose of serving *Western's* nationwide network of distributors. Indeed, although Lil Lightning shipped products to Pennsylvania, the admission by Western's corporate designee that products delivered to any of Western's six warehouses could be shipped to *any of Western's 11,000 distributors in any other State* reveals how attenuated Lil Lightning's contacts with Pennsylvania were. *See* ECF No. 76-1 at 53:22–55:3.

The record here merely reflects efforts by Lil Lightning "to exploit a national market," as opposed to the "deliberate targeting of the forum" the Third Circuit requires to support specific personal jurisdiction. *Shuker*, 885 F.3d at 780. That the RP3 ended up in the hands of a

Pennsylvania resident—and not the resident of some other State—was the result of Western's "unilateral activity," *O'Connor*, 496 F.3d at 317, not Lil Lightning purposefully availing itself "of the privilege of conducting activities within [Pennsylvania]." *D'Jamoos*, 566 F.3d at 102-03. Accordingly, the Court finds that Western has failed to carry its burden to demonstrate that Lil Lightning had the requisite minimum contacts with the forum for this Court's exercise of specific personal jurisdiction to be proper. Having determined that Lil Lightning lacked even the minimum contacts necessary for personal jurisdiction to attach, the Court need not address whether exercising jurisdiction in this case "'comport[s] with traditional notions of fair play and substantial justice.'" *Miller Yacht Sales*, 384 F.3d at 97 (quoting *Burger King*, 471 U.S. at 476).

### IV.    Conclusion

For the foregoing reasons, Third Party Defendant Lil Lightning's Renewed Motion to Dismiss for Lack of Jurisdiction is hereby GRANTED and Lil Lightning is hereby DISMISSED from this case.

DATED this 11th day of January, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record